Vanessa BABERS, Plaintiff,

v.

**CITY OF TALLASSEE, ALABAMA, and Officer Bill Royal, Defendants.**

No. Civ.A. 00–A–1191–N.

United States District Court, M.D. Alabama, Northern Division.

July 24, 2001.

Joseph B. Lewis, Montgomery, AL, for plaintiff.

Alex L. Holtsford, Jr., Rick A. Howard, Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

This matter comes before the court on a Motion for Summary Judgment filed by Defendants City of Tallassee and Officer Bill Royal ("Royal") on April 2, 2001 (doc. # 22). Plaintiff Vanessa Babers ("Plaintiff") filed her complaint on August 30, 2000, bringing claims for violation of 42 U.S.C. § 1983 (Count I), for false arrest and imprisonment (Count II), and for malicious prosecution (Count III). Defendants seek summary judgment on all claims.

For the reasons to be stated, Defendants' Motion for Summary Judgment is due to be GRANTED in part and DENIED in part.

## I. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party

"must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## II. *FACTS*

The submissions of the parties establish the following facts, construed in a light most favorable to the nonmovant:

On Sunday, October 24, 1999, Plaintiff and her friend, Therese Thompkins ("Thompkins"), traveled from their home in Union Springs, Alabama to Milstead, Alabama to go to a bar called Bill's Lounge. Plaintiff and Thompkins decided to leave Bill's Lounge around 1:00 a.m. Plaintiff contends that she did not know the directions to return to her house and had to rely on Thompkins's directions. Thompkins fell asleep soon after they left the lounge. As a result, Plaintiff contends that she got lost and soon found herself driving through Tallassee, Alabama. Tallassee is many miles from Plaintiff's home and is in the wrong direction from Bill's Lounge.

Royal observed Plaintiff's car on an otherwise empty road and observed Plaintiff "braking erratically" by stopping her car and then speeding up. Royal observed Plaintiff stop and then start again two or three times.[1] Royal pulled Plaintiff over

---

1. Defendants also assert that Plaintiff drove on the wrong side of the road. (Taunton Aff.

at 1). Plaintiff, however, contends that she

to the side of the road. As Royal approached Plaintiff's car, Royal immediately smelled alcohol. Royal asked Plaintiff where she was coming from and she stated that she had left a party at Bill's Lounge. Plaintiff initially denied drinking any alcohol that night, but later indicated that she had consumed a couple of wine coolers. After talking to Plaintiff, Royal administered three field sobriety tests: the one leg stand test, the nine step heel to toe test, and the horizontal gaze nystagmus ("HGN") test.

"Nystagmus is an involuntary jerking or bouncing of the eyeball that occurs when there is a disturbance of the vestibular (inner ear) system or the oculomotor control of the eye." National Highway Traffic Safety Administration, *Horizontal Gaze Nystagmus: The Science and The Law, A Resource Guide for Judges, Prosecutors and Law Enforcement* 1, (2000), at http://www.nhtsa.dot.gov/people/injury/enforce/nystagmus/hgntxt.html ("NHSTA Manual"). The "horizontal gaze nystagmus" test measures the extent to which a person's eyes jerk as they follow an object moving from one side of the person's field of vision to the other. *Pennsylvania v. Muniz*, 496 U.S. 582, 585 n. 1, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990). "The test is premised on the understanding that, whereas everyone's eyes exhibit some jerking while turning to the side, when the subject is intoxicated 'the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct.'" *Id.* (quoting 1 R. Erwin et al., Defense of Drunk Driv-

ing Cases § 8A.99, pp. 8A–43, 8A–45 (1989)). As the degree of impairment becomes greater, the jerking or bouncing, i.e. the nystagmus, becomes more pronounced. NHSTA Manual at 1.

An officer checks for vertical gaze nystagmus by raising an object several inches above the subject's eyes. *Id.* at 6. As with the horizontal gaze nystagmus test, an officer is looking for the jerking of the eyes. The vertical gaze nystagmus test is not part of the horizontal gaze nystagmus test, but is a good indicator of a person's impairment due to alcohol or certain other drugs. *Id.*

In conducting the horizontal gaze nystagmus test, Royal asked Plaintiff to stand with both feet together, hands side to side, and look straight ahead. Royal instructed Plaintiff to use her eyes only and follow the tip of his pen. When Royal moved his pen side to side, he observed a slight jerk in Plaintiff's eyes. Royal viewed this as an indication that Plaintiff was under the influence of alcohol.

After performing the horizontal gaze nystagmus test and, according to Royal, the vertical gaze nystagmus test,[2] Royal asked Plaintiff to perform the one leg stand test. The one leg stand test requires an individual to stand straight, put her arms to her side, and raise one foot six to eight inches off the ground for thirty seconds. When Royal asked Plaintiff to perform this test, Plaintiff put her toes on the ground several times and once had to place her entire foot on the ground.

did not drive on the wrong side of the road or cross the centerline. (Babers Dep. at 85, lines 19–21). Because this matter is before the court on summary judgment, the court views the evidence in the light most favorable to Plaintiff. Accordingly, the court in deciding this summary judgment motion accepts Plaintiff's factual assertion that she did not drive on the wrong side of the road.

**2.** Although the court recognizes that Defendants do not assert that Royal conducted a vertical gaze nystagmus test, Plaintiff correctly notes that Royal's description of the horizontal gaze nystagmus test he employed included the vertical gaze nystagmus test because Royal moved a pen up and down to determine if Plaintiff's eyes jumped.

Royal also asked Plaintiff to perform the nine step heel to toe test, also known as the walk and turn test. This test requires an individual to take nine heel to toe steps counting out loud with each step and on the last step pivot and reverse direction. When Royal asked Plaintiff to perform this test, she walked side to side without touching her heel to her toes. In addition, Royal had to explain the test several times to Plaintiff.

After conducting these field sobriety tests, Royal determined that this was a borderline case, but decided to arrest Plaintiff for driving under the influence. Royal arrested Plaintiff and took her and Thompkins, who was intoxicated, to the police station. After arresting Plaintiff, Royal searched the car and found an open container of alcohol.

At the police station, Sergeant Jimmy Rogers performed a breathalyzer test, the Intoxilyzer 5000, on Plaintiff to determine her blood alcohol content. The test reported a blood alcohol level of 0.00% which indicated the presence of no alcohol in Plaintiff's body. Although the Intoxilyzer test reported a blood alcohol level of 0.00%, Rogers told Royal to charge Plaintiff with driving under the combined influence of alcohol and a controlled substance in violation of Ala.Code § 32–5A–191(a)(4) because Plaintiff admitted that she had consumed a couple of wine coolers and the horizontal gaze nystagmus test indicated that Plaintiff was possibly under the influence of a controlled substance. The following morning, when the magistrate arrived, Plaintiff was released on her own recognizance.

On December 3, 1999, Plaintiff went to Tallassee Municipal Court for trial on the charge of driving under the combined influence of alcohol and a controlled substance. Prior to trial, the prosecuting attorney dismissed the charge.

## III. DISCUSSION

Defendants argue that they are entitled to qualified immunity on Plaintiff's claims that Royal lacked probable cause to stop Plaintiff's car, to arrest Plaintiff, and to continue to detain Plaintiff after the breathalyzer test reported that Plaintiff had no alcohol in her system. Defendants argue that Plaintiff's custom or policy claims against the City fail. Defendants also assert that Plaintiff's state law claims must be dismissed because, *inter alia*, Plaintiff failed to file a notice of her potential claim against the City of Tallassee within six months from the date of the incident as is required by Ala.Code § 11–47–23. The court will review each issue in turn.

### A. Section 1983

■ An individual has a federally protected right to be free from unlawful arrest and detention resulting in a significant restraint of liberty and violation of this right may be grounds for suit under 42 U.S.C. § 1983. *Von Stein v. Brescher,* 904 F.2d 572, 579 (11th Cir.1990); *Dennis v. Warren,* 779 F.2d 245, 247 (5th Cir.1985). An arrest is unlawful if it is not supported by probable cause. *Lowe v. Aldridge,* 958 F.2d 1565, 1570 (11th Cir.1992). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Gonzalez,* 969 F.2d 999, 1002 (11th Cir.1992). Probable cause determinations traditionally have been guided by reviewing the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

■ Intertwined with the question of probable cause is the issue of qualified immunity. Qualified immunity protects

government officials who have acted within their discretionary authority from civil trials and other litigation burdens "if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" [3] *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1149 (11th Cir.1994) (*en banc*) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Id.* at 1150.

 Additionally, the standard for determining if an officer violated clearly established law is an objective one and does not include inquiry into the officer's subjective intent or beliefs. *Von Stein*, 904 F.2d at 579. "Thus, a police officer is entitled to qualified immunity if a reasonable police officer could have believed his or her actions were lawful in light of clearly established law and the information possessed by the officer at the time the conduct occurred." *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir.2000).

Although it is clearly established that an arrest made without probable cause violates the Fourth Amendment, *Von Stein*, 904 F.2d at 579, "all that is required for qualified immunity to be applicable to an arresting officer is arguable probable cause to believe that a person is committing a particular public offense; that is, where reasonable officers in the same circumstances and possessing the same

knowledge as the Defendants could have believed that probable cause existed to arrest the plaintiffs." *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir.2001) (citations omitted); *see also Jones v. Cannon*, 174 F.3d 1271, 1283 n. 3 (11th Cir. 1999) ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry."). In applying the qualified immunity test in the context of Plaintiff's alleged unlawful arrest, the court must determine whether reasonable officers in the same circumstances and possessing the same knowledge as Royal could have believed that probable cause existed to arrest Plaintiff for violation of Ala.Code § 32–5A–191(a)(4), driving a vehicle under the combined influence of alcohol and a controlled substance to a degree which renders the person incapable of safely driving.

 In reviewing an assertion of entitlement to qualified immunity, the court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *Conn v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999). Only if this threshold determination is surmounted does the court "proceed to determine whether that right was clearly established at the time of the alleged violation." *Id.* Therefore, the court will first determine if Defendants had actual probable cause and if actual probable cause did not exist, then the court will address whether Defendants had arguable probable cause.

### 1. Initial Stop

 Plaintiff argues that Royal did not have probable cause to stop Plaintiff's

---

**3.** An official may show that an act was within his discretionary authority merely by showing that the acts (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority. *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir.1994). In

this case, Royal's actions in reference to Plaintiff clearly were undertaken in the performance of his duties as a police officer of the City of Tallassee and were within the scope of his discretionary authority.

vehicle. The court first notes that Royal conducted an investigatory stop of Plaintiff's vehicle and thus only needed reasonable suspicion to stop Plaintiff's vehicle. An officer may conduct a brief investigative stop of a vehicle so long as such a stop is justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. *United States v. Smith*, 799 F.2d 704, 707 (11th Cir.1986).

■ In this case, Royal had reasonable suspicion to stop Plaintiff for driving under the influence. At approximately 1:30 a.m., Royal observed Plaintiff's car braking erratically by stopping and then speeding up, then stopping and then speeding up. (Royal Dep. at 26, lines 5–8). Plaintiff's car did this two or three times in the middle of the highway for no apparent reason. (Taunton Aff. at 2). According to Royal, individuals who brake erratically have a thirty percent chance of being intoxicated. (Royal Dep. at 26, lines 10–12). Plaintiff has not presented any arguments or evidence to refute Royal's statement that a correlation exists between an intoxicated driver and a driver who brakes erratically. Accordingly, the court finds that Plaintiff's erratic braking provided Royal with reasonable suspicion to stop Plaintiff for driving under the influence.

### 2. Traffic Arrest

Plaintiff asserts that Royal did not have probable cause to arrest Plaintiff. Defendants assert that in light of the totality of the circumstances the record establishes that Royal had probable cause to arrest Plaintiff for operating a vehicle while under the influence of alcohol or a controlled substance. The record indicates that Royal observed Plaintiff's car braking erratically by stopping and then speeding up, then stopping and speeding up again, in the middle of the road for no apparent reason. When Royal first made contact

with Plaintiff, Royal immediately detected the odor of alcohol coming from Plaintiff's car. (Royal Dep. at 22, lines 17–20). Plaintiff informed Royal that she had left a party at a bar. When initially asked if she had consumed any alcoholic beverages, Plaintiff denied having drunk any alcohol that night. (Videotape of Plaintiff's Arrest ("Videotape") at 01:29:32–01:29:56).[4] Plaintiff, however, later told Royal and Taunton that she had drunk a couple of wine coolers. (Royal Dep. at 23, lines 1–4; Taunton Aff. at 2; Videotape at 01:38:14–01:38:22; 01:38:46–01:38:49).

Royal also conducted three field sobriety tests on Plaintiff. In performing the one leg stand test, Plaintiff put her toes on the ground several times and once had to place her entire foot on the ground. After Royal explained the nine step heel to toe test several times to Plaintiff, Plaintiff performed this test incorrectly by walking side to side without touching her heel to her toes and had trouble holding her balance. (Royal Dep. at 69, lines 8–10; lines 17–20).

Plaintiff counters Royal's characterization by arguing that the videotape of the traffic stop fails to demonstrate that Plaintiff in performing these two tests had sufficient inability to constitute evidence of impairment. The court has reviewed the videotape of the traffic stop and concludes that the videotape does not contradict Royal's testimony. As to both the one leg stand test and the nine step heel to toe test, the videotape fails to show the bottom portion of Plaintiff's legs. As a result, the videotape does not show whether Plaintiff put her foot down numerous times while performing the one leg stand test, and does not show whether she walked side to side without touching her heel to her toes while performing the nine step heel to toe test. The videotape, however, does show

---

4. The numbers referenced are the time codes superimposed onto the videotape.

that Royal explained the nine step heel to toe test several times to Plaintiff. Plaintiff has produced no other evidence to contradict Royal's description of Plaintiff's performance on the one leg stand test and the nine step heel to toe test. Accordingly, the court finds that Plaintiff has not created any genuine issue of material fact to contradict Royal's description of Plaintiff's performance on these two tests.

 In administering the horizontal gaze nystagmus test, Royal observed that Plaintiff's eyes jumped "some but very little." [5] (Royal Dep. at 36, lines 13–14). Royal acknowledges that there are no set standards to determine how much jumping is enough to indicate a person is intoxicated, but that the more jumping the higher the possibility of intoxication. (Royal Dep. at 36, lines 20 through 37, line 1). Although he observed "some but very little" jumping, Royal viewed this slight jumping as an indication that Plaintiff was intoxicated.

 Plaintiff asserts that Royal could not rely on the horizontal gaze nystagmus test to support a probable cause determination because evidence of an individual's performance on the test is inadmissible. As Plaintiff correctly states, the Alabama Supreme Court has held that the result of a horizontal gaze nystagmus test is inadmissible at trial to prove intoxication. *Sides v. State,* 574 So.2d 859, 859 (Ala. 1990). Alabama courts, however, do allow the results of a horizontal gaze nystagmus test to support an officer's determination of probable cause. *Sides v. State,* 574 So.2d 856, 858 (Ala.Crim.App.1990), *aff'd* 574 So.2d 859 (Ala.1990). In *Sides,* a police officer conducted several field sobriety tests, including the horizontal gaze nystagmus test, in reaching his determination that a defendant was intoxicated. *Id.* at 856–57. The court held that the defendant's performance on the field sobriety tests provided the police officer with probable cause to arrest the defendant for driving under the influence. *Id.* at 858. Accordingly, the court held that the police officer could rely on the results of the horizontal gaze nystagmus test in making his probable cause decision. Therefore, the court rejects Plaintiff's contention that Royal could not base his probable cause determination in part on Plaintiff's performance on the horizontal gaze nystagmus test.

 Based on the totality of the circumstances, the court finds that Royal had probable cause to arrest Plaintiff for driving under the influence. The results of the field sobriety tests support a finding of probable cause. Although Royal observed

---

5. Plaintiff asserts that Royal's failure to perform any pre-test screening, such as asking Plaintiff if she wore contact lenses or if she had taken any prescription medication, reduces the value of the results of the horizontal gaze nystagmus test. The court rejects Plaintiff's contention. As to the contact lenses, Plaintiff's own citation refutes Plaintiff's contention that contact lenses may substantially interfere with the horizontal gaze nystagmus test. Plaintiff cites the 1992 NHSTA Manual which states that "[t]here is only a *very slight chance* that contact lenses might interfere with the HGN test." (Pl. Resp. Mot. Summ. J. at 7) (*emphasis added*). In a probable cause determination, where an officer needs a reasonable belief, a very slight chance that contact lenses may affect the test does not make Royal's reliance on the test unreasonable. Moreover, the current NHSTA Manual states that "contact lenses, hard or soft, do not affect the [horizontal gaze nystagmus] test in any way." NHSTA Manual at 5. Accordingly, the court rejects Plaintiff's argument concerning contact lenses.

Similarly, the court rejects Plaintiff's argument that Royal's failure to ask Plaintiff whether she had taken any prescription medication makes Royal's reliance on the test unreasonable. The evidence indicates that Royal did in fact ask Plaintiff if she had taken any drugs and she replied that she did not. (Videotape at 01:38:43–01:38:50).

very little nystagmus, Royal did observe some nystagmus and such an observation indicates some impairment. Plaintiff's performances on the one leg stand test and the nine heel to toe test indicated impairment. In addition to Plaintiff's performance on the field sobriety tests, Royal observed Plaintiff brake erratically, detected the odor of alcohol, knew that Plaintiff's passenger was intoxicated, and was told by Plaintiff that she had a couple of wine coolers and that she recently left a party at a bar. Based on this evidence, the court finds that Royal had facts within his knowledge sufficient to warrant a reasonable belief that Plaintiff was driving under the influence of alcohol and/or drugs in violation of Ala.Code § 32–5A–191(a)(4). Accordingly, the court finds that Royal had probable cause to arrest Plaintiff after the traffic stop.

### 3. Continued Detention

Plaintiff also asserts that Royal violated her constitutional rights by detaining her after he discovered exculpatory evidence. In particular, Plaintiff contends that the probable cause to continue to detain Plaintiff dissipated when the Intoxilyzer 5000 reported that Plaintiff had no alcohol in her system. Plaintiff asserts that Royal violated her constitutional rights at that point by continuing to detain her despite his knowledge that Plaintiff was not under the influence of alcohol. Defendants counter by arguing that once an officer has probable cause to arrest an individual, the officer is not required to reassess his probable cause determination. Alternatively, Defendants argue that even if Royal had a duty to reassess his probable cause determination, he had probable cause to continue to detain Plaintiff.

Defendants argue that the Supreme Court's decision in *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), forecloses Plaintiff's claim that Royal had a duty to reassess his probable cause determination after he became aware of exculpatory evidence that allegedly dissipated his initial probable cause determination. In *Baker,* a plaintiff filed a § 1983 claim alleging that Potter County officials intentionally failed to investigate and determine if the plaintiff was the wrong man arrested. Plaintiff was arrested under a facially valid arrest warrant issued in his name, but in actuality the man wanted for the crime was the plaintiff's brother who had used the plaintiff's driver's license when he was arrested on a drug charge. Three days after the arrest, Potter County realized that they had the wrong man and released the plaintiff. During this three day period, the plaintiff repeatedly protested that he was innocent. The Court ruled that "a person arrested pursuant to a warrant issued by a magistrate on a showing of probable cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." *Id.* at 143, 99 S.Ct. 2689. Because the plaintiff was arrested pursuant to a facially valid warrant, the Court found that his detention did not violate his constitutional rights.

The Court also recognized that "mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty ... without due process of law.'" *Id.* at 145, 99 S.Ct. 2689. The Court, however, held that notwithstanding the plaintiff's protestations of innocence, the Potter County Officials were not constitutionally required to investigate the validity of the plaintiff's protest during the three days that he was in their custody. *Id.* at 143–45, 99 S.Ct. 2689.

Defendants' reliance on *Baker* is misplaced. In this case, Plaintiff does not claim, as did the plaintiff in *Baker,* that the

state officials should have determined through some affirmative inquiry that Plaintiff was innocent. Instead, Plaintiff contends that Royal had actual knowledge of her innocence, but still detained her. "Such a claim is not precluded by *Baker*, because that case does not involve actual knowledge of the defendant's innocence, but rather the failure to take affirmative steps to determine his innocence." *Gay v. Wall*, 761 F.2d 175, 178–79 (4th Cir.1985).

The court must now determine whether a police officer has an obligation to release an individual who was arrested without a warrant when, subsequent to the arrest, the officer receives information that detracts from the initial probable cause determination. In *Thompson v. Olson*, 798 F.2d 552 (1st Cir.1986), the First Circuit addressed this issue in the context of a state law claim for false imprisonment. In *Thompson*, the First Circuit observed that a police officer's initial finding of probable cause justifies an arrest and a reasonable period of detention for the purpose of bringing the arrestee before a magistrate. *Id.* at 556 (citing *Gerstein v. Pugh*, 420 U.S. 103, 113–14, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)). The court cautioned, however, that "a police officer, upon an initial finding of probable cause, may [not] close his eyes to all subsequent developments.... Probable cause to arrest does not suspend an officer's continuing obligation to act 'reasonably.'" *Id.* On the other hand, the court stated that an officer "having once determined that there is probable cause to arrest ... should not be required to reassess his probable cause conclusion at every turn, whether faced with the discovery of some new evidence or a suspect's self-exonerating explanation from the back of the squad car." *Id.* In striking the balance between these two interests, the court adopted the following standard

> following a legal warrantless arrest based on probable cause, an affirmative duty to release arises only if the arrest-ing officer ascertains beyond a reasonable doubt that the suspicion (probable cause) which forms the basis for the privilege to arrest is unfounded. Restatement, Torts, 2d, § 134, Comment f. If the arresting officer does not ascertain beyond reasonable doubt that his suspicions are unfounded, then, having once made a lawful arrest, he may avoid successful claims of false imprisonment by bringing the suspect promptly before a magistrate and by refraining from the use of excessive force.

*Id.* at 556.

■■■ In determining whether to adopt the standard in *Thompson*, the court is mindful that the First Circuit in *Thompson* dealt with common law torts, while the court in this case is dealing with constitutional requirements. The court finds guidance from the Fifth Circuit's decision in *McConney v. City of Houston*, 863 F.2d 1180 (5th Cir.1989). In *McConney*, the Fifth Circuit adopted the approach in *Thompson* to cases dealing with constitutional requirements. *Id.* at 1185. The Fifth Circuit reasoned that "[t]his rule strikes the proper balance as it prevents the officer responsible from willfully continuing detention of one so arrested who the officer has now actually ascertained beyond reasonable doubt is not intoxicated, without requiring the officer to reassess the initial probable cause finding at every change in circumstances or protestation of the arrestee." *Id.; see also Duckett v. City of Cedar Park*, 950 F.2d 272, 279 (5th Cir.1992) (holding that "a plaintiff may state a constitutional claim if, after the police officers make an arrest pursuant to a warrant, the police officers fail to release the arrestee after they receive information upon which to conclude beyond a reasonable doubt that such warrant had been withdrawn"). The court agrees with the Fifth Circuit that the standard announced

in *Thompson* is the appropriate standard in determining whether a police officer violated an individual's constitutional rights to be free from unlawful detention. Accordingly, the court finds that following a lawful warrantless arrest, a police officer has an affirmative duty to release an arrestee if he ascertains beyond a reasonable doubt that the probable cause which formed the basis for the arrest was unfounded.

▮ Plaintiff asserts that Royal violated her rights by not releasing her after he received information upon which to conclude beyond a reasonable doubt that the reasons for the initial arrest were no longer valid. In particular, Plaintiff argues that once Royal obtained the results of the Intoxilyzer 5000 breathalyzer test which revealed that Plaintiff had a blood alcohol level of 0.00%, Royal had received information upon which to conclude beyond a reasonable doubt that his reasons for the initial arrest were no longer valid. Defendants have not argued before the court that Royal had any reason to believe that the Intoxilyzer 5000 was not working properly. Moreover, Defendants have not presented to the court any evidence or arguments to explain how a blood alcohol level of 0.00% does not preclude a determination that Plaintiff had no alcohol in her system. The court finds that Plaintiff has produced sufficient evidence to allow a reasonable jury to conclude that the results of the Intoxilyzer 5000 test provided Royal with information that proved beyond a reasonable doubt that his initial probable cause determination that Plaintiff was driving under the influence of alcohol was unfounded.

Consequently, the court finds a jury question exists as to whether Royal had probable cause to charge Plaintiff with violating Ala.Code § 32–5A–191(a)(4). This section provides that a person shall not drive any vehicle while "[u]nder the combined influence of alcohol and a controlled substance to a degree which renders him or her incapable of safely driving." In other words, this offense requires evidence that an individual was driving under the influence of both alcohol and a controlled substance. If Royal lacked any evidence to prove that Plaintiff was driving under the influence of alcohol, Royal lacked probable cause to charge Plaintiff for violating Ala.Code § 32–5A–191(a)(4).

▮ Although the court recognizes that Royal may have lacked probable cause to continue to detain and charge Plaintiff with driving under the combined influence of alcohol and a controlled substance, the arrest and detention is still valid if probable cause existed to arrest and charge Plaintiff for a closely related offense. *United States v. Atkinson,* 450 F.2d 835, 838 (5th Cir.1971) ("[W]hen a crime under which the arrest is made and a crime for which probable cause exists are in some fashion related, then there is no question but that there is a valid arrest.");[6] *see also Avery v. King,* 110 F.3d 12, 14 (6th Cir.1997) ("[E]ven where there is no probable cause to arrest the plaintiff for the crime charged, proof of probable cause to arrest the plaintiff for a related offense is also a defense which may entitle the arresting officer to qualified immunity."); *Kelley v. Myler,* 149 F.3d 641, 647–48 (7th Cir.1998) ("[E]ven if probable cause does not exist for the crime charged, proof of probable cause to arrest the plaintiff on a closely related charge is also a defense."); *United States v. Rambo,* 789 F.2d 1289, 1294 (8th Cir.1986) ("Where a defendant is arrested for the wrong of-

---

6. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions rendered by the former Fifth Circuit prior to October 1, 1981.

fense, the arrest is still valid if probable cause existed to arrest the defendant for a closely related offense."). The related crimes defense asks "whether the conduct that served as the basis for the charge for which there was no probable cause could, in the eyes of a similarly situated reasonable officer, also have served as the basis for a charge for which there was probable cause." *Trejo v. Perez,* 693 F.2d 482, 486 (5th Cir.1982).

Defendants argue that Royal had probable cause to arrest and charge Plaintiff for the closely related offense of driving under the influence of a controlled substance. The court finds that driving under the influence of a controlled substance and driving under the combined influence of alcohol and a controlled substance are closely related offenses. Thus, Defendants have a defense against Plaintiff's claims for false arrest and illegal detention, if a similarly situated reasonable officer would have had probable cause to continue to detain Plaintiff on a charge of driving under the influence of a controlled substance in violation of Ala.Code § 32–5A–191(a)(3).

Defendants assert that the results of the breathalyzer test did not disprove Royal's probable cause determination that Plaintiff was driving under the influence of a controlled substance. The Intoxilyzer 5000 does not detect whether an individual is under the influence of controlled substances. (Royal Dep. at 70, lines 5–9). Consequently, the Intoxilyzer 5000 did not provide any information to disprove that Plaintiff was driving under the influence of a controlled substance.

Plaintiff asserts that Defendants' evidence does not support a probable cause determination that she was driving under the influence of a controlled substance. In particular, Plaintiff argues that the only test that Royal could have used to detect whether Plaintiff was under the influence of a controlled substance was the vertical gaze nystagmus test and Royal did not conduct the vertical gaze nystagmus test. First, the court must determine whether the record shows that Royal conducted a vertical gaze nystagmus test. Plaintiff asserts that the videotape of the traffic stop does not show Royal moving his pen up and down, but only shows Royal moving his pen from side to side. The videotape reveals that Royal for the most part moves his pen from side to side. (Videotape at 01:33:54–01:34:21). The videotape also shows that at one point Royal briefly moved his pen up and down. (Videotape at 01:34:07–01:34:09). The court finds that this brief movement does not conclusively demonstrate that Royal conducted the vertical gaze nystagmus test. Accordingly, the court finds that a genuine issue of material fact exists as to whether Royal conducted the vertical gaze nystagmus test. Thus, the court will not consider the alleged results of the vertical gaze nystagmus test in determining whether Royal had probable cause to arrest Plaintiff.

Without the results of the vertical gaze nystagmus test, Plaintiff asserts that Royal had no indication that Plaintiff was under the influence of a controlled substance. Plaintiff argues that the horizontal gaze nystagmus test only tests for alcohol and does not test for controlled substances. Royal stated in his deposition that the horizontal gaze nystagmus test checks for alcohol, while the vertical gaze nystagmus test checks for drugs. (Royal Dep. at 24, lines 2–22; 66, lines 6–19). Rodgers stated in his affidavit that the horizontal gaze nystagmus test can detect impairment caused by drugs. (Rodgers Aff. at 2). Neither party has offered any other evidence on this issue. The record before the court does not conclusively indicate whether the horizontal gaze nystagmus test can detect impairment caused from drug use. As a result, the court will construe the evidence in the light most favorable to

Plaintiff—that the horizontal gaze nystagmus test does not test for controlled substances.[7]

■ The court must determine if the other evidence of impairment provided Royal with probable cause to arrest and detain Plaintiff for driving under the influence of a controlled substance. The evidence indicates that Plaintiff used her brakes erratically and failed the one leg stand and the heel to toe field sobriety tests. The court finds that this evidence alone did not provide Royal as a matter of law with probable cause to arrest and detain Plaintiff for driving under the influence of a controlled substance. Although Royal observed some impairment in Plaintiff, no evidence has been presented that Royal had direct or circumstantial evidence to indicate that Plaintiff's impairment was caused by a controlled substance. For instance, Royal did not detect the odor of marijuana emanating from Plaintiff, did not observe Plaintiff's eyes as glassy or bloodshot, and Plaintiff denied taking any drugs. *Cf. United States v. Bizier*, 111 F.3d 214, 218–19 (1st Cir.1997) (holding that probable cause existed to arrest a plaintiff for driving under the influence of a controlled substance where, *inter alia,* the officers observed that the plaintiff's eyes were glassy, his eyelids were heavy, his pupils were pinpoints, and he was swaying); *Ex parte City of Montgomery,* 758 So.2d 565, 570 (Ala.1999) (holding that an officer had probable cause to arrest an individual for driving under the combined influence of alcohol and a controlled substance where the arrestee informed the officer that she had consumed some amount of alcohol, as well as a prescription drug, her eyes were bloodshot, she was nervous, she was swaying, and she failed the field sobriety tests); *Hopper v. City of Prattville,* 781 So.2d 346, 350–51 (Ala.Crim.App.2000) (holding that an officer had probable cause to arrest an individual for driving under the influence of a controlled substance where the officer detected the odor of marijuana emanating from the arrestee and observed the arrestee's physical impairment as illustrated by the arrestee's poor performance on field-sobriety tests). The court, therefore, finds that the evidence before the court fails to establish as a matter of law that Royal had probable cause to arrest Plaintiff for driving under the influence of a controlled substance.

■ Although the court finds that the evidence submitted fails to establish that Royal had actual probable cause to arrest Plaintiff for driving under the influence of a controlled substance, Royal is entitled to qualified immunity if he had arguable probable cause. Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest the plaintiffs." *Scarbrough,* 245 F.3d at 1302. The court finds that a reasonable officer in the same circumstances and possessing the same knowledge as Royal could have believed that probable cause existed to arrest Plaintiff. A reasonable officer by knowing that Plaintiff was physically impaired as illustrated by her erratic driving and deficient performance on two field sobriety tests, and that Plaintiff was not under the influence of alcohol, could have believed that a controlled substance caused Plaintiff's impairment. Plaintiff has failed to show that pre-existing law dictated the conclusion for

---

7. The court recognizes that scientific evidence exists that would answer the question of whether the horizontal gaze nystagmus test would detect impairment caused by drugs. Because neither party has cited to the court any such scientific evidence, the court has made its factual decision in this case without the assistance of such scientific evidence.

**1312**

every like-situated reasonable government agent that what Royal was doing violated federal law in the circumstances. Accordingly, the court finds that Royal is entitled to qualified immunity.[8]

### B. Municipal Custom or Policy

The Supreme Court has placed strict limitations on municipal liability under § 1983. Municipalities "may not be held liable for constitutional deprivations on the theory of respondeat superior. Rather, they may be held liable only if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." *Denno v. School Bd. of Volusia County*, 218 F.3d 1267, 1276 (11th Cir.2000) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Plaintiff must identify a policy or custom and show that the policy or custom inflicted the injury. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir.1998).

Plaintiff argues that the City had a policy of requiring all individuals arrested to remain incarcerated until the arrival of a magistrate, even if an officer ascertains beyond a reasonable doubt that the probable cause which formed the basis for the arrest was unfounded. As evidence of this policy, Royal stated in his deposition that under City policy once somebody is arrested they have to remain incarcerated until they appear before a magistrate. (Royal Dep. at 46 at lines 5–8; 46 at line 23 through 47 at line 4). Even if an officer determines that the arrest is mistaken, the City's policy does not provide a way to release the arrested individual without requiring them to appear before a magistrate. (Royal Dep. at 47 at line 23 through 48, line 9). The City has produced no evidence to contradict Plaintiff's evidence as to the existence of this policy. The court, therefore, finds that Plaintiff has produced sufficient evidence to allow a reasonable jury to conclude that the City had a policy that required an individual once arrested to remain incarcerated until the arrival of a magistrate, even if an officer

8. Plaintiff also appears to argue in brief that the City violated her Fifth Amendment rights by charging her with having an open container of alcohol in her car in order to obtain leverage against her if she decided to sue the City. In support, Plaintiff cites Royal who testified that the city attorney insisted that the open container charge be filed in order to protect the City against a possible lawsuit. (Royal Dep. at 57, line 2 through 58, line 1). Acting upon the city attorney's instructions, Royal assisted in procuring an arrest warrant for Plaintiff's violation of the open container city ordinance.

Although the city attorney and Royal may have acted in bad faith, Royal is still entitled to qualified immunity. "The qualified immunity test is 'one of objective legal reasonableness, without regard to whether the government official involved acted with subjective good faith.'" *Hope v. Pelzer*, 240 F.3d 975, 981 (11th Cir.2001) (quoting *Swint v. City of Wadley*, 51 F.3d 988, 995 (11th Cir.1995));

*Koch v. Rugg*, 221 F.3d 1283, 1295 (11th Cir.2000) ("The subjective intent of government actor defendants plays no part in qualified immunity analysis; objective legal reasonableness is the determinative standard.") (citation omitted). In this case, Royal had probable cause to charge Plaintiff with the open container charge. Royal discovered an open container of alcohol in Plaintiff's car pursuant to a search of her vehicle after she was arrested. (Royal Dep. at 52, lines 18–20; 53, lines 12–16; Videotape at 01:50:20–01:50:30). There was no constitutional deprivation in this regard. Accordingly, the court finds that Royal would be entitled to qualified immunity on this ground.

Furthermore, this occurred after the Plaintiff was released from custody and the Plaintiff was never arrested on the charge. (Royal Dep. at 60, line 18 through 61, line 2).

Finally, this is not asserted as a separate claim in the Complaint or in the pretrial order.

ascertains beyond a reasonable doubt that the probable cause which formed the basis for the arrest was unfounded.

The court now must determine whether Plaintiff has produced evidence to show that this policy caused her to suffer a constitutional deprivation. "A municipality may be held liable under § 1983 if the plaintiff shows that a 'custom' or 'policy' of the municipality was the 'moving force' behind the constitutional deprivation." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir.1997) (citing *Monell*, 436 U.S. at 690–94, 98 S.Ct. 2018). As the court already held, although Royal is entitled to qualified immunity, there remains an issue of material fact as to whether Royal violated Plaintiff's constitutional rights because he lacked probable cause to continue to detain Plaintiff for driving under the influence after the breathalyzer test.

■■■ The court also finds that a genuine issue of material fact exists as to whether the policy was the moving force behind the alleged constitutional deprivation. Rodgers stated he ordered the continuing detention of Plaintiff because he believed that he had probable cause to charge Plaintiff with driving under the combined influence of alcohol and a controlled substance. (Rodgers Aff. at 2). Rodgers did not state he kept Plaintiff detained due to any policy. Royal, however, testified that he continued to detain Plaintiff because of the City's policy. (Royal Dep. at 45, line 20 through 46 at line 13). Due to the officers' conflicting reasons for continuing to detain Plaintiff, a fact question exists whether the City's policy was the moving force behind the Plaintiff's continued detention. Accordingly, Defendants' Motion for Summary Judgement for the City of Tallassee is due to be denied on this ground.

■■■ Plaintiff also asserts that the City is liable for inadequately training and supervising its officers, including those officers who violated Plaintiff's rights. A municipality is liable for failure to train in limited circumstances. "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "To establish a 'deliberate or conscious choice' or such 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold*, 151 F.3d at 1350. "[W]ithout notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." *Id.* at 1351.

Plaintiff has presented no evidence of any prior incident in which a City police officer arrested an individual with probable cause and then later failed to release the individual after the officer ascertained beyond a reasonable doubt that the probable cause which formed the basis for the arrest was unfounded. Moreover, Plaintiff has presented no evidence of any prior false arrest by City officers in which the officer lacked probable cause to arrest an individual for driving under the influence. Without such prior incidents, the City had no notice of a need to train or supervise its officers in these areas. *Id.* at 1351 (finding no liability for failure to train when plaintiff presented no evidence of prior incidents). Accordingly, the City is not liable for any failure to train and supervise.[9]

9. The Supreme Court in dictum left open the possibility that a need to train could be so obvious resulting in a city's being liable with-

### C. State Law Claims

Plaintiff concedes in her Response to Motion for Summary Judgment that she did not file a notice of claim with the City of Tallassee pursuant to Alabama law, and thus, agrees with Defendants that her state law claims should be dismissed. Because Plaintiff expressly withdraws her state law claims for false arrest and imprisonment and malicious prosecution, these claims are deemed abandoned and summary judgment is due to be granted as to these claims. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995) (*en banc*) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

## V. *CONCLUSION*

For the reasons stated above, Defendants' Motion for Summary Judgment is due to be GRANTED in part and DENIED in part. Accordingly, it is HEREBY ORDERED as follows:

1. The Motion for Summary Judgment (doc. # 22) filed by Defendants City of Tallassee and Officer Bill Royal is GRANTED as to Officer Bill Royal. Judgment is entered in favor of the Defendant Officer Bill Royal and against Plaintiff Vanessa Babers.

2. The Motion for Summary Judgment (doc. # 22) filed by Defendants City of Tallassee and Officer Bill Royal is GRANTED as to the City of Tallassee on Plaintiff's state law claims for false arrest and imprisonment and malicious prosecution and Plaintiff's section 1983 failure to train or supervise claim. Judgment is entered in favor of the Defendant City of Tallassee and against Plaintiff Vanessa Babers on Plaintiff's state law claims for false arrest and imprisonment and malicious prosecution and Plaintiff's section 1983 failure to train or supervise claim.

3. The Motion for Summary Judgment (doc. # 22) filed by Defendants City of Tallassee and Officer Bill Royal is DENIED as to the City of Tallassee on Plaintiff's section 1983 claim based on the City's alleged policy which requires all individuals arrested to remain incarcerated until the arrival of a magistrate, even if an officer ascertains beyond a reasonable doubt that the probable cause which formed the basis for the arrest was unfounded.

4. The case will proceed against Defendant City of Tallassee on Plaintiff's section 1983 claim based on the City's alleged policy which requires all individuals arrested to remain incarcerated until the arrival of a magistrate, even if an officer ascertains beyond a reasonable doubt that the probable cause which formed the basis for the arrest was unfounded. The issues for the jury will be whether such a policy existed and, if so, whether the Plaintiff was held in custody after the police officers received evidence proving beyond a reasonable doubt that the probable cause which formed the basis for Plaintiff's arrest for driving under the influence of alcohol was unfounded, and with no probable cause for a charge of driving under the influence of a controlled substance, because of the policy.

---

out a pattern of prior constitutional violations. *City of Canton*, 489 U.S. at 390, 109 S.Ct. 1197. Plaintiff does not argue that evidence of prior incidents is not required to establish a city policy in this case because the need to train and supervise in the particular areas in issue was so obvious and the likelihood of constitutional violations was highly predictable so that liability attaches for this single incident. Therefore, this is not an issue before the court.