BRISCOE, Chief Judge.
Defendant Officer Patricia Yazzie appeals the district court’s denial of qualified immunity in this § 1983 action alleging wrongful arrest and imprisonment (Count I) and illegal seizure of property (Count II). This is an interlocutory appeal following the district court’s ruling in an action brought by Spero Panagoulakos pursuant to 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. § 1343. The “district court’s denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable ‘final decision’ within the meaning of 28 U.S.C. § 1291.” Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). We reverse.
I

Factual Background

On the afternoon of July 8, 2010, Pana-goulakos went for a drive in a pickup truck. The truck’s temporary registration tag was too faded to read, which prompted Lieutenant Ricardo Galindo to pull Pana-goulakos over. While Lieutenant Galindo made initial inquiries of Panagoulakos, Panagoulakos volunteered that he had a firearm in the vehicle. Lieutenant Galindo then walked back to his car and ran a few routine checks, which included checking the National Crime Information Center (NCIC) database. The NCIC report received stated:
* * * * WARNING — THE FOLLOWING IS AN NCIC PROTECTION OR *1128 DER RECORD. DO NOT SEARCH, DETAIN, OR ARREST BASED SOLELY ON THIS RECORD. CONTACT ENTERING AGENCY TO CONFIRM STATUS AND TERMS OF PROTECTION ORDER* * * * * * * * *THE SUBJECT OF THIS RECORD IS PROHIBITED FROM RECEIVING OR POSSESSING A FIREARM UNDER FEDERAL LAW (TITLE 18, U.S.C., SECTION 922)* * * *
AplLApp. at 100. When Panagoulakos was alerted to this development, he admitted that he was subject to a protective order, but he insisted that the judge had given him special permission to carry a firearm. Indeed, he claimed that the protective order contained an express provision to that effect.
At this point, Lieutenant Galindo radioed for another officer to assist at the scene. Then he contacted “county warrants,” which verified that the protective order was valid. And he also called Domestic Violence Sergeant Paul Szyche, who confirmed that arresting Panagoula-kos under these circumstances would be consistent with Albuquerque Police Department policy. By the time Officer Yaz-zie arrived on the scene, Panagoulakos was in handcuffs. Lieutenant Galindo briefed Officer Yazzie on the situation and instructed her to take Panagoulakos to the substation. There, Officer Yazzie was to confirm that the protective order was valid and that it did not contain the exception Panagoulakos claimed.
Officer Yazzie believed, incorrectly, that all orders of protection prohibit possession of a firearm. As it turns out, the subject of a protective order is forbidden from possessing firearms by 18 U.S.C. § 922(g) only when classified as an “intimate partner.” After Officer Yazzie obtained a copy of the protective order and reviewed it, she found no exception which would permit the possession of a firearm. She then prepared a criminal complaint and had Pana-goulakos detained.

The Protective Order

On the first page of the protective order, Panagoulakos’s relationship to the protected party is listed as “ex-boyfriend.” Id. at 106. At the bottom of the page, it reads:
As a result of this order, it may be unlawful for you to possess or purchase ammunition or a firearm, including a rifle, pistol or revolver, under 18 U.S.C. Section 922(g)(8). If you have any questions whether federal law makes it illegal for you to possess or purchase a firearm, you should consult an attorney.
Id. On the second page, near the top, it reads:
1. NOTICE, APPEARANCES AND STATUS
This order was entered on stipulation of the parties. [ ] The relationship of the parties is that of an “intimate partner” as defined in 18 U.S.C. Section 921(a)(32). {See 2 below)
2. EFFECT OF STIPULATION TO ORDER OF PROTECTION Violation of this order can have serious consequences, including:
A ....
B. If you are the spouse or former spouse of the other party, an individual who cohabitates with or has cohabitated with the other party, or if you and the other party have had a child together, federal law prohibits you from possessing or transporting firearms or ammunition while this order is in effect. If you have a firearm or ammunition, you should immediately dispose of the firearm or ammunition. Violation of this law is a federal crime punish *1129 able by imprisonment for up to ten (10) years and a fíne of up to two hundred fifty-thousand dollars ($250,000).
Id. at 107. The “intimate partner” box is unchecked. Id.

Procedural History

When Panagoulakos filed this suit on May 5, 2011, he named as defendants Officer Yazzie, Officer John Doyle,[1] Lieutenant Galindo, and the City of Albuquerque. Under § 1983, Panagoulakos alleged violations of his Fourth and Fourteenth Amendment rights against wrongful arrest and false imprisonment (Count I), and illegal seizure of his property (Count II). He also alleged violation of his due process rights (Count III), and as regards the City of Albuquerque, he alleged a negligent hiring, training, and retention claim (Count IV).
Defendants moved for summary judgment on all claims, and Panagoulakos also moved for partial summary judgment on his Fourth and Fourteenth Amendment claims. As is relevant here, the district court held that Officer Yazzie was entitled to qualified immunity for the initial arrest and seizure of property because the initial arrest was supported by probable cause. But the court denied qualified immunity as to claims arising out of Panagoulakos’s continued detention after Officer Yazzie had the opportunity to review the protective order. The court concluded that Officer Yazzie no longer had probable cause to continue the detention after she reviewed the protective order, and that her continued detention of Panagoulakos was a “mistake” that was “unreasonable in view of applicable law and the facts known at the time.” Aplt.App. at 207.
II

Standard of Review

“Because of the underlying purposes of qualified immunity, we review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions.” Cortez v. McCauley, 478 F.3d 1108, 1114 (10th Cir.2007) (en banc) (internal quotation marks omitted). “When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established.” Courtney v. Okla. ex rel., Dep’t of Pub. Safety, 722 F.3d 1216, 1222 (10th Cir.2013) (internal quotation marks omitted). We have discretion to address either prong first. Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). As the “clearly established” prong resolves this case, we begin with it.

Clearly Established

“For a constitutional right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Wilson v. Montano, 715 F.3d 847, 852 (10th Cir.2013) (alteration omitted) (internal quotation marks omitted). As a result, “for a right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.” Cortez, 478 F.3d at 1114-15. Notably, “an unpublished opinion provides little support for the notion that the law is *1130 clearly established on a given point.” Morris v. Noe, 672 F.3d 1185, 1197 n. 5 (10th Cir.2012) (internal quotation marks omitted).
All roads lead to the same conclusion in this case; we need address only one. Even assuming arguendo that clearly established law demonstrated that Officer Yazzie no longer had probable cause to detain Panagoulakos after her review of the protective order (a conclusion to which we do not subscribe[2]), Panagoulakos would still bear the burden of showing that clearly established law imposed a duty on Officer Yazzie to release him. In other words, Panagoulakos must show that, even though probable cause supported his initial arrest, clearly established law gave fair warning to Officer Yazzie that following her review of the protective order it was her constitutional duty to release him.
There is only one standard to which the parties point that could impose such a duty. In Thompson v. Olson, the First Circuit held that “following a legal war-rantless arrest based on probable cause, an affirmative duty to release arises only if the arresting officer ascertains beyond a reasonable doubt that the suspicion (probable cause) which forms the basis for the privilege to arrest is unfounded.”[3] 798 F.2d 552, 556 (1st Cir.1986). For Pana-goulakos to prevail, the Tenth Circuit must have adopted the Thompson standard, and it must be clearly established that the Thompson standard required his release under these facts. See Ashcroft v. al-Kidd, — U.S.-, 131 S.Ct. 2074, 2084, 179 L.Ed.2d 1149 (2011) (“We have repeatedly told courts ... not to define clearly established law at a high level of generality.” (citation omitted)).
Quite to the contrary, we have never applied the Thompson standard in a published opinion. We cited the case in Romero v. Fay, 45 F.3d 1472, 1478 n. 3, 1480 n. 6 (10th Cir.1995), but we did not adopt its test.[4] The only case in which we mentioned the standard is the unpublished case of Titus v. Ahlm, 297 Fed.Appx. 796, 801 (10th Cir.2008) (unpublished). But not only does a single unpublished opinion “provide[ ] little support for the notion that the law is clearly established,” Morris, 672 F.3d at 1197 n. 5, also the facts of Titus are inapposite. In that case, Officer Ahlm arrested Titus for DWI after he struggled to satisfactorily perform sobriety tests and refused to take a breath alcohol test during the stop. Titus, 297 Fed.Appx. at 798-99. At the station, Titus acquiesced to a breath test from a “calibrated and certified machine,” which registered that Titus had a .02% blood alcohol level. Id. at 799. This reading was too low to support a conviction of DWI in New Mexico, but high enough to be charged with “driving while impaired to the slightest degree.” Id. at 799 n. 1, 800. Citing Thompson, we concluded that Officer Ahlm had no affirmative duty to release Titus, because the breath test was inculpatory; the test results supported probable cause that Titus was driving while impaired to the slightest degree. Id. at 800-01. Here, by contrast, Panagoulakos contends that the protective order negated probable cause. Thus, even if Titus could be said to have adopted the *1131 Thompson standard, its facts provide meager support for the proposition that the law clearly established a duty to release under circumstances like those confronted by Officer Yazzie.
Nor has the “clearly established weight of authority from other courts” imposed a duty to release under these circumstances. Cortez, 478 F.3d at 1114-15 (internal quotation marks omitted). A handful of other courts have adopted some form of the Thompson standard. See, e.g., Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 279 (5th Cir.1992) (applying Thompson and extending it to constitutional claims); Babers v. City of Tallassee, Ala., 152 F.Supp.2d 1298, 1308-09 (M.D.Ala.2001) (adopting Thompson and extending it to constitutional claims); Ruttan v. Bd. of Comm’rs of Johnson Cnty., Kan., 2000 WL 1114961, at *5 (D.Kan.2000) (“Several federal courts have held that, unless it becomes exceedingly clear that probable cause no longer exists, a law enforcement officer does not have an affirmative duty to release a detainee who was arrested based on probable cause.”). But those courts do not represent the “clearly established weight of authority of other courts.” Cortez, 478 F.3d at 1114-15 (internal quotation marks omitted). The majority of courts have never imposed such a duty, much less under circumstances similar enough to make “the contours of the right ... sufficiently clear that a reasonable official” in Officer Yaz-zie’s position would understand that her actions violated that right. See Wilson, 715 F.3d at 852 (alteration omitted) (internal quotation marks omitted).
In short, Officer Yazzie is entitled to qualified immunity because no clearly established law imposed on her a duty to release Panagoulakos following his lawful arrest after the traffic stop.
REVERSED.

. Officer Doyle assisted Officer Yazzie at the substation, and he physically transported Pan-agoulakos to jail after Officer Yazzie had examined the protective order and prepared the criminal complaint. Aplt.App. at 159.

. Nor, apparently, does Panagoulakos. See Aplee. Br. at 12 ("The Tenth Circuit has not adopted a test to determine when probable cause has dissipated.”).

. The court derived its test from the Restatement (Second) of Torts § 134 cmt. f (1965). See Thompson, 798 F.2d at 556.

.Indeed, Panagoulakos concedes this point. See Aplee. Br. at 15 ("Romero did not adopt the ‘beyond any reasonable doubt' test.”).