FILED
United States Court of Appeals
Tenth Circuit

April 24, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LUKE SANCHEZ,

        Plaintiff-Appellant,

v.

C. LABATE, Deputy Sheriff; DON
DONGES, Captain; RENE RIVERA,
Sheriff,

        Defendants-Appellees.

No. 13-2109
(D.C. No. 1:12-CV-00720-WJ-ACT)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **McKAY**, and **BACHARACH**, Circuit Judges.

Plaintiff Luke Sanchez appeals from the district court's order dismissing his

amended complaint under Fed. R. Civ. P. 12(b)(6) on the grounds that the defendants

were entitled to qualified immunity on his claims for unlawful arrest and false

imprisonment and that he had not sought to state a claim for malicious prosecution.

We conclude that it has not been clearly established that a law-enforcement officer

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

must resolve a suspect's claim of self-defense before arresting the suspect for an admitted killing. We therefore affirm.

## I.  Background

### A.  The Amended Complaint

We summarize the allegations of the amended complaint:  On July 4, 2009, Sanchez was driving near his home when he witnessed a burglary in progress at a business and promptly called 911 to report the crime.  He followed the robbers' van when they drove away, remaining on the phone with the 911 dispatcher.

The van later stopped abruptly and a man got out.  He ran back to Sanchez's truck and used a weapon of some sort to smash the driver's side window and batter Sanchez.  Marks were left on the driver's door of the truck, the window was shattered, and some glass was pushed inside the truck.  In response to this "life threatening attack," Aplt. App. at 7 ¶¶ 6-7, Sanchez fired one shot through the remaining glass in the window, killing the assailant, Gary Gabaldon.  Sanchez "immediately reported the shooting to the 911 dispatcher who was still on the phone." *Id.* at ¶ 6.  The call was recorded.

After officers arrived, "it was very quickly evident from all of the physical evidence available, that . . . Sanchez had been attacked by Gary Gabaldon, and that the homicide was justified under New Mexico law, because the single shot fired by Plaintiff was fired in self-defense." *Id.* ¶ 7.  Nevertheless, Sanchez was taken to the sheriff's office.  While there, he fully explained to the defendants that he had shot

Gabaldon in self-defense, which was "confirmed by the readily available recording of the 911 call which some or all of the defendants listened to, and the physical evidence located at the scene." *Id.* Defendants Donges and Rivera, however, directed defendant LaBate to charge Sanchez with an open count of murder and place him in custody. A magistrate later ordered Sanchez's discharge when a preliminary hearing failed to establish probable cause.

## B. Procedural History

Sanchez filed this civil-rights suit under 42 U.S.C. § 1983 in July 2012. The defendants moved to dismiss the amended complaint under Rule 12(b)(6). The district court dismissed Sanchez's claims for unlawful arrest and false imprisonment on the ground of qualified immunity. It noted that Sanchez had admitted killing Gabaldon and that even though Sanchez asserted self-defense, the officers did not see the encounter, "and there was no conclusive evidence available at the scene which eliminated the existence of probable cause." Aplt. App. at 54. The court also observed that Sanchez had made "it clear in his response [to the defendants' motion] that he [did] not allege a malicious prosecution claim." *Id.* at 48.

## II. Discussion

Sanchez argues on appeal (1) that the district court erred in granting the defendants qualified immunity on his unlawful-arrest and false-imprisonment claims because the law was clearly established that the officers lacked probable cause to

arrest him and keep him in custody, and (2) that the court erred in dismissing his malicious-prosecution claim because the defendants did not address the claim.

The doctrine of qualified immunity requires that a civil-rights suit be dismissed "if the complaint fails to allege a constitutional violation or if the alleged violation was not clearly established." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). If dispositive of the claim, we ordinarily need address only the second element of qualified immunity, that is, whether the law supporting a constitutional violation was clearly established. *See Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011) (discussing *Camreta v. Greene*, 131 S. Ct. 2020, 2032 (2011)). "[F]or a right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013) (internal quotation marks omitted).

"This court reviews de novo a district court's grant of a motion to dismiss based on qualified immunity." *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). "[W]e consider only the facts alleged in plaintiff['s] Amended Complaint in reviewing the motion." *Wittner v. Banner Health*, 720 F.3d 770, 775 (10th Cir. 2013). And "we accept as true all well-pleaded factual allegations in a complaint and

view these allegations in the light most favorable to the plaintiff." *Id.* at 774 (internal quotation marks omitted). We must determine only whether the complaint "contain[s] 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* at 775 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). But "we are not 'bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

## A. Unlawful Arrest

Sanchez's false-arrest claim is based on his contention that the officers lacked probable cause to arrest him. "Probable cause exists where the facts and circumstances known to the officer at the time of arrest, and of which the officer had reasonably trustworthy information, were sufficient to warrant a prudent person in believing defendant had committed or was committing a criminal offense." *United States v. Rodriguez*, 739 F.3d 481, 485 n.2 (10th Cir. 2013). "'Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction.'" *Id.* at 488 (quoting *Adams v. Williams*, 407 U.S. 143, 149 (1972)). It "does not require proof beyond reasonable doubt" or "even require the suspect's guilt to be more likely true than false." *Kerns*, 663 F.3d at 1188 (internal quotation marks omitted). "Instead, the relevant question is whether a substantial probability existed that the suspect committed the crime, . . . requiring something more than a bare suspicion." *Id.* (internal quotation marks omitted). Under qualified-immunity doctrine, "law enforcement officials who reasonably but

mistakenly conclude that probable cause is present are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (internal quotation marks omitted).

We conclude that Sanchez has failed to show that it was clearly established in 2009 that the defendants violated his constitutional rights by arresting him after he admitted killing a man, even though he claimed he shot the man in self-defense. Sanchez has failed to cite a single Supreme Court or Tenth Circuit decision holding that law-enforcement officers must resolve a claim of self-defense before arresting someone who has admitted killing another person. He argues that there is "widespread consensus among other circuits that facts establishing an affirmative defense negate probable cause," Aplt. Opening Br. at 17, but he cites published decisions with holdings to that effect only from the Second, Sixth, and Seventh Circuits. We question whether the law of only three circuits makes that law "clearly established." *See Panagoulakos*, 741 F.3d at 1129, 1131. But in any event, two of those circuits held that an affirmative defense to a crime negated probable cause only when the defense was "conclusively" established: *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004). And the complaint, although certainly alleging evidence of self-defense, presents a sufficiently ambiguous situation that one could not infer that self-defense was *conclusively* established by the evidence known to the officers. The physical evidence could not establish the sequence of events, which is a

critical matter in a claim of self-defense; and a recording of the 911 call would provide only the evidence available to one of the senses, with limited context.

New Mexico law does not change our analysis. We recognize that the New Mexico Supreme Court has held that the State bears the burden to prove the unlawfulness of a killing when a criminal defendant raises a claim of self-defense at trial. *See State v. Benally*, 34 P.3d 1134, 1136 (N.M. 2001); *State v. Parish*, 878 P.2d 988, 992 (N.M. 1994). But this burden on the State does not arise in pretrial proceedings. As the New Mexico Court of Appeals has held, a grand jury need not be instructed on a target's claim of self-defense before the grand jury determines whether there is probable cause to charge the target with a crime. *See State v. Augustin M.*, 68 P.3d 182, 188-89 (N.M. App. 2003). Thus, New Mexico law, rather than supporting Sanchez, actually suggests that the officers had no duty to consider a claim of self-defense in deciding whether they had probable cause to arrest him. We therefore affirm the dismissal of the false-arrest claim.

## B. False Imprisonment

Sanchez's false-imprisonment claim fails for the same reason that his false-arrest claim has been rejected. The claim is based on the contention that the officers lacked probable cause when they formally charged him with murder. But we considered that same evidence in rejecting the false-arrest claim. Moreover, we recently held that clearly established law did not impose a constitutional duty on an

officer to release an arrestee when post-arrest evidence negates the probable cause

supporting the arrest.  *See Panagoulakos*, 741 F.3d at 1130-31.

### C.  Malicious Prosecution

Finally, Sanchez argues that the defendants never challenged his properly

pleaded malicious-prosecution claim and that the district court should not have

dismissed that claim.  But Sanchez's response to the defendants' motion to dismiss

the amended complaint said, "The Defense is correct in asserting that the Plaintiff did

not make a malicious prosecution claim under the Due Process clause of the 14th

Amendment."  Aplt. App. at 33.  The district court did not err in dismissing the

malicious-prosecution claim.

Affirmed.

Entered for the Court


Harris L Hartz
Circuit Judge