# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number : _____

Filing Date: <u>November 19, 2018</u>

**No. A-1-CA-35785**

**DEBRA GALLEGOS,**

 Plaintiff-Appellant,

v.

**NEW MEXICO STATE POLICE**
**OFFICER CHARLES J. VERNIER,**

 Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
**Emilio J. Chavez, District Judge**

Kennedy Kennedy & Ives
Joseph P. Kennedy
Adam C. Flores
Albuquerque, NM

for Appellant

Jarmie & Associates
Mark D. Jarmie
Las Cruces, NM

for Appellee

**OPINION**

**HANISEE, Judge.**

{1}     Plaintiff Debra Gallegos brought civil rights claims against Defendant State Police Officer Charles Vernier for violations of her right under the United States Constitution to be free from unreasonable seizure and unlawful arrest. The district court granted Defendant's motion for summary judgment after concluding that Defendant "should be entitled to qualified immunity because [D]efendant reasonably believed that he had probable cause to arrest [P]laintiff at the time of the arrest[,]" and dismissed Plaintiff's case with prejudice. Concluding that the district court erred in dismissing all of Plaintiff's claims, we affirm in part, reverse in part, and remand for further proceedings.

**BACKGROUND**

{2}     On May 4, 2013, at approximately two o'clock in the afternoon, Plaintiff was stopped at a DWI checkpoint while traveling on Interstate 25 in Northern New Mexico. Upon making contact with Plaintiff, Defendant "observed that Plaintiff was emitting a 'strong odor of alcoholic beverage' and had 'bloodshot[,] watery eyes.'" Plaintiff denied drinking that day but acknowledged that she had been drinking the previous night. She informed Defendant that she "had bad allergies" and "had been diagnosed with dry eyes by [her] doctor[,]" a condition for which she used eye drops. She agreed to submit to standardized field sobriety tests

(SFSTs), on which Defendant contended Plaintiff "performed ... poorly." Specifically, Defendant described Plaintiff as being "unable to remain in the starting position and ha[ving] to move her foot and raise her arms for balance" during the walk-and-turn test, failing to have "smooth pursuit in both eyes" during the horizontal gaze nystagmus test, and putting her foot down during the one-leg-stand test. Defendant arrested Plaintiff for a first-offense DWI, a misdemeanor, and transported her to the local detention center, where Plaintiff agreed to submit to a breathalyzer test.

{3}    Approximately thirty minutes after the initial stop, Plaintiff completed a first breathalyzer test, which recorded a result of .000 breath alcohol content (BrAC). Plaintiff submitted to a second breathalyzer test, which also recorded a result of .000 BrAC. Defendant then transported Plaintiff to a nearby medical center where Defendant ordered hospital medical personnel to draw Plaintiff's blood to test it for drugs. According to Defendant, he did so "[b]ased on Plaintiff's poor performance on the [SFSTs]." When the blood test results were not immediately available, Defendant transported Plaintiff back to the detention center, where she was booked for DWI. The blood test later came back negative for both alcohol and drugs, and the DWI charge was later dismissed for failure to prosecute.

**Procedural History**

{4}    Plaintiff filed a complaint under 42 U.S.C. §§ 1983 and 1988 (2012) to recover damages for alleged deprivations of her civil rights resulting from Defendant's actions on May 4, 2013. Plaintiff brought two claims in her action. The first was for "unreasonable seizure" based on Defendant's (1) "seizing her for the crime of DWI and transporting her to a hospital after she blew a .000 [on] two breath tests[,]" (2) "causing her blood to be taken from her person without probable cause to believe that she was under the influence of drugs and without a judicially sanctioned warrant to search[,]" and (3) "transporting her back to the jail and booking her on the crime of DWI without probable cause to believe that Plaintiff was under the influence of liquor or alcohol and without a judicially sanctioned warrant." Plaintiff's second claim was for "unlawful arrest" based on Defendant "arresting her for DWI after she blew a .000 on a breath test" because "Defendant did not have probable cause to believe that she had been driving while under the influence of alcohol or drugs."

{5}    Defendant moved for summary judgment, arguing that he is entitled to qualified immunity. Characterizing Plaintiff's case as "an arrest case," Defendant contended that "the proper constitutional provision to analyze Plaintiff's claim is the Fourth Amendment and its probable cause standard." Defendant argued that "[t]he existence of probable cause or arguable probable cause is . . . a complete defense to a claim for unreasonable seizure and unlawful arrest brought pursuant to

3

42 []U.S.C. [§] 1983." Defendant thus concluded that "there was no violation of the Fourth Amendment because there was probable cause or arguable probable cause for Plaintiff's arrest" based on "Plaintiff's poor performance of the SFTSs and [Defendant's] observation[s]." Defendant's motion for summary judgment did not address that aspect of Plaintiff's claim alleging unreasonable seizure based on the warrantless blood draw that Defendant ordered.

{6} In her response, Plaintiff argued that the facts, taken in the light most favorable to her, established that Defendant had violated her clearly established Fourth Amendment rights in three ways. Plaintiff first argued that Defendant violated her rights "by arresting her and detaining her after two breath alcohol tests showed that [Plaintiff] was not under the influence of alcohol[.]" Plaintiff next argued that Defendant violated her rights by "failing to release her after two breath alcohol tests showed that [Plaintiff] was not under the influence of alcohol[.]" Plaintiff lastly argued that Defendant violated her rights by "subjecting her to a warrantless blood test unsupported by exigent circumstances[.]" Other than disputing that "there was an odor of alcohol emanating from her vehicle[,]" Plaintiff did not dispute Defendant's statements of undisputed facts, including Defendant's characterization of her performance on the SFSTs. She did, however, offer certain clarifications and explanations, such as that "the wind was blowing

4

strongly along the highway, which caused her skirt to lift up during the tests" and resulted in her being "distracted and embarrassed" during the SFSTs.

{7}     In response to Plaintiff's argument regarding the warrantless blood draw, Defendant argued for the first time in his reply that Plaintiff "consented to the blood draw[,]" thereby rendering the blood draw constitutional. According to Defendant, Plaintiff "did not and could not contest this fact" and "it is undisputed that [Plaintiff] consented."

{8}     The district court granted Defendant's motion for summary judgment. In its order, the district court stated, "The determinative issue is whether Defendant Vernier had probable cause to arrest [P]laintiff for driving while under the influence." The district court concluded that "[u]nder the facts presented to the [c]ourt[,] Defendant Vernier should be entitled to qualified immunity because [he] reasonably believed that he had probable cause to arrest [P]laintiff at the time of the arrest." The district court's order contained no findings or conclusions related to Plaintiff's unreasonable seizure claim based on the warrantless blood draw and whether Plaintiff consented to the blood draw. From the district court's subsequent order dismissing Plaintiff's case with prejudice, Plaintiff appealed.

**DISCUSSION**

**Standard of Review**

{9}      We review de novo a district court's grant of summary judgment. *Benavidez v. Shutiva*, 2015-NMCA-065, ¶ 8, 350 P.3d 1234. Likewise, we review de novo the applicability of qualified immunity, which is a question of law. *Starko, Inc. v. Gallegos*, 2006-NMCA-085, ¶ 11, 140 N.M. 136, 140 P.3d 1085. Ordinarily, summary judgment may only be granted in New Mexico when, viewing the evidence in the light most favorable to the nonmoving part, "there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280 (internal quotation marks and citation omitted). However, courts "review summary judgment decisions involving a qualified immunity defense somewhat differently than other summary judgment rulings." *Nelson v. McMullen*, 207 F.3d 1202, 1205-06 (10th Cir. 2000) (internal quotation marks and citation omitted). Because of "the unique nature of qualified immunity, . . . [w]hen a defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test." *Nelson*, 207 F.3d at 1206; *cf. Romero*, 2010-NMSC-035, ¶ 10 (explaining in the context of a motion for summary judgment not based on qualified immunity that "[i]n New Mexico, summary judgment may be proper when the moving party has met its initial burden of establishing a prima facie case for summary judgment"). "First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show

6

that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Nelson*, 207 F.3d at 1206 (internal quotation marks and citation omitted). A plaintiff's failure to meet either of these burdens entitles the defendant to qualified immunity and a grant of summary judgment. *See Benavidez*, 2015-NMCA-065, ¶¶ 11-14 (affirming the district court's dismissal of the plaintiff's "unreasonable seizure" claim where the facts established that the defendant officer had probable cause to arrest the plaintiff, meaning there was no violation of the plaintiff's constitutional rights); *Cockrell v. Bd. of Regents of N.M. State Univ.*, 1999-NMCA-073, ¶ 8, 127 N.M. 478, 983 P.2d 427 ("The immunity obtains unless it can be shown as a matter of clearly established law that an objectively reasonable official would have known that rights were being violated.").

{10}    Thus, a court reviewing a grant of summary judgment based on qualified immunity must consider whether the undisputed facts viewed in the light most favorable to the nonmovant, coupled with those facts adduced by the plaintiff, provide "any evidentiary support for finding a possible violation of law." *Benavidez*, 2015-NMCA-065, ¶ 8 (internal quotation marks and citation omitted). If not, summary judgment for the defendant is proper. *See Starko, Inc.*, 2006-NMCA-085, ¶¶ 21, 30 (expressing "doubt that [the p]laintiffs have even alleged a 'deprivation' " and, therefore, reversing the district court's denial of qualified

7

immunity and remanding for entry to summary judgment in favor of the defendants). If, on the other hand, the plaintiff has proven a violation of a constitutionally protected right, we next ask "whether the right in question was 'clearly established' at the time of the violation." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam). If it was, then granting summary judgment based on qualified immunity is improper. *Cf. Chavez v. Bd. of Cty. Comm'rs of Curry Cty.*, 2001-NMCA-065, ¶ 30, 130 N.M. 753, 31 P.3d 1027 (concluding that the defendant officers were "not entitled to qualified immunity" where "the relevant law was clearly established"). Alternatively, "if it is clear that the relevant legal issue was not clearly established at the time, we [need] not reach the first issue" of whether a violation occurred at all. *Benavidez*, 2015-NMCA-065, ¶ 8.

**I.  Defendant Is Entitled to Qualified Immunity on (1) Plaintiff's "Unlawful Arrest" Claim, and (2) Plaintiff's "Unreasonable Seizure" Claim to the Extent It Is Based On Defendant's Failure to Release Her Following the Breath Tests**

{11}   In opposing Defendant's motion for summary judgment, Plaintiff first attempted to prove a violation of law based on what she described as Defendant "arresting her and detaining her *after* two breath alcohol tests showed that [she] was not under the influence of alcohol[.]" (Emphasis added.) As an initial matter, we clarify this ambiguous, somewhat misleading allegation by noting that it was undisputed that Defendant placed Plaintiff under arrest *prior* to the breathalyzer tests. To the extent Plaintiff attempts to characterize the facts as suggesting

8

otherwise—i.e., that Plaintiff was not placed under arrest until after the breathalyzer tests—the record provides no support for such an interpretation. Indeed, at the hearing on Defendant's motion, the district court expressly sought clarification regarding when Defendant placed Plaintiff under arrest and was told that, per Defendant's affidavit, Plaintiff was placed under arrest "following the failed sobriety tests[,]" i.e., prior to the breathalyzer tests. Plaintiff did not challenge that representation. This clarification is important because the question of whether Defendant violated Plaintiff's Fourth Amendment right to be free from "unlawful arrest"—Plaintiff's second claim, which is grounded in her contention that "Defendant did not have probable cause to believe that she had been driving while under the influence of alcohol or drugs"—hinges on whether Defendant had probable cause to arrest Plaintiff at the time he arrested her. *See State v. Ochoa*, 2004-NMSC-023, ¶ 9, 135 N.M. 781, 93 P.3d 1286 ("Probable cause exists when the facts and circumstances warrant a belief that the accused had committed an offense, or is committing an offense. More specifically, probable cause must be evaluated in relation to the circumstances as they would have appeared to a prudent, cautious and trained police officer." (internal quotation marks and citation omitted)).

**A. Defendant Had Probable Cause to Arrest Plaintiff**

**{12}** Here, the district court concluded that Defendant had probable cause to arrest Plaintiff and transport her to the detention center for breath testing based on (1) Defendant's "interaction" with Plaintiff, (2) Plaintiff's poor performance on the SFSTs, (3) the odor of alcohol on Plaintiff, and (4) Plaintiff's admission to having drunk six beers the night before. The record also supplies the additional undisputed fact that Plaintiff had "bloodshot[,] watery eyes" when Defendant first came into contact with her. The district court's conclusion that probable cause existed to arrest Plaintiff following the SFSTs is supported by New Mexico law. *See State v. Granillo-Macias*, 2008-NMCA-021, ¶ 12, 143 N.M. 455, 176 P.3d 1187 (holding that an odor of alcohol emanating from the defendant, his lack of balance at the vehicle, and his failure to satisfactorily perform field sobriety tests supported an objectively reasonable belief that the defendant had been driving while intoxicated, and thus constituted probable cause to arrest); *State v. Jones*, 1998-NMCA-076, ¶ 10, 125 N.M. 556, 964 P.2d 117 (concluding that the officer had probable cause to arrest for DWI when the officer noticed bloodshot, watery eyes, slurred speech, and a strong odor of alcohol, when the defendant admitted to having drunk two beers, swayed when he was talking to the officer, and failed the field sobriety tests); *see also State v. Sanchez*, 2001-NMCA-109, ¶ 12, 131 N.M. 355, 36 P.3d 446 (explaining that "[e]ach case stands on its own facts; there is no one set of circumstances required for probable cause").

10

{13}     However, that determination alone—while important—is not, as the district court erroneously believed it to be, dispositive of all of Plaintiff's claims. While probable cause may have supported Defendant's initial decision to place Plaintiff under arrest, it does not necessarily or automatically render constitutional any and all actions by Defendant, nor does it supply a basis to immunize Defendant for separately alleged, later-occurring constitutional violations. Plaintiff's first claim—that she was unreasonably seized by Defendant over an extended period of time and at certain points at which Plaintiff contends her ongoing seizure became constitutionally unreasonable—is not necessarily foreclosed by the district court's determination that no violation occurred upon Plaintiff's initial arrest. We next consider that aspect of Plaintiff's "unreasonable seizure" claim based on Defendant's continued detention of her following her separate breath tests that yielded .000 BrAC results.

**B.     Defendant's Failure to Release Plaintiff Following the Two Breath Tests Did Not Violate Clearly Established Law**

{14}     Plaintiff argued to the district court that probable cause to arrest her for DWI "dissipated when breath testing showed conclusively that Plaintiff had no breath alcohol." She thus argued that Defendant "had a duty to release" her following the breathalyzer tests and that his failure to do so violated a clearly established Fourth Amendment right. Plaintiff's argument fails for two reasons.

11

{15}     First, Plaintiff's argument ignores that "dissipation" as to probable cause to suspect Plaintiff of driving under the influence of "intoxicating liquor" neither automatically nor necessarily dispelled probable cause to suspect that Plaintiff was driving under the influence of drugs. In New Mexico, it is a crime for a person to drive a vehicle while under the influence of *either* "intoxicating liquor" *or* "any drug to a degree that renders the person incapable of safely driving a vehicle." NMSA 1978, § 66-8-102(A), (B) (2016). The undisputed facts in the record establish that Defendant "placed Plaintiff under arrest for Driving under the Influence of an Intoxicating Liquor *or Drugs*." (Emphasis added.) Importantly, Plaintiff has not challenged whether Defendant had probable cause or arguable probable cause to initially arrest Plaintiff for driving while under the influence of drugs, specifically. Instead, she argues that in order for Defendant to continue to detain her for and ultimately charge her with driving while under the influence following her breath tests, Defendant "had a duty to conduct [a drug recognition evaluation] to re-establish probable cause of intoxication." Because Plaintiff cites no authority to support this contention, we assume none exists. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority."). Critically, because it is Plaintiff's burden to show that the clearly established law would have put

12

Defendant on notice that his failure to "re-establish probable cause of intoxication" following Plaintiff's negative breath tests violated Plaintiff's rights, her failure to cite a single on-point case compels the conclusion that she has failed to meet her burden.

{16}    Second and similarly, Plaintiff fails to establish that Defendant's failure to immediately release Plaintiff following her breathalyzer tests violated a clearly established right protected under the Fourth Amendment. While it is generally recognized that "[a] person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated[,]" *United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005), such a rule does not compel the conclusion that Defendant's failure to release Plaintiff under the facts of this case violated a right "that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (per curiam) (internal quotation marks and citation omitted). The lone case Plaintiff perfunctorily cites, *McConney v. City of Houston*, 863 F.2d 1180 (5th Cir. 1989), to support the general proposition that officers have an ongoing duty to assess their initial probable cause determination does not suggest, let alone clearly establish, that an officer faced with the same facts as Defendant would be violating an arrestee's constitutional rights by not immediately releasing the arrestee following breath tests of .000 BrAC.

13

{17} *McConney* involved a § 1983 claim by a plaintiff who was arrested for public intoxication and detained for four hours in accordance with a city regulation despite the fact that the booking officer "knew [the plaintiff] was sober[.]" *McConney*, 863 F.2d at 1182-83. Aside from being distinguishable on the facts, *McConney* involved a discrete legal question, different than that presented here: whether the City of Houston's "four hour detention policy" deprived McConney of his constitutional rights. *Id.* at 1184. The court concluded as a general matter that "a person may constitutionally be detained for at least four or five hours following a lawful warrantless arrest for public intoxication without the responsible officers having any affirmative duty during that time to inquire further as to whether the person is intoxicated[.]" *Id.* at 1185. The court, however, limited its holding, explaining that "once a responsible officer actually does ascertain beyond reasonable doubt that one who has been so arrested is in fact not intoxicated, the arrestee should be released." *Id.* The court ultimately declined to reverse judgment against the city, which was premised on a jury's determination that McConney had been "detained even after the appropriate officials had determined that he clearly was no longer intoxicated." *Id.* at 1185, 1188. *McConney* is thus distinguishable.

{18} Plaintiff has failed to demonstrate that existing precedent placed the constitutional question of an officer's affirmative duty to release an arrestee— arrested on suspicion of driving while under the influence of intoxicating liquor *or*

14

drugs—following negative breath tests beyond debate. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (explaining that to conclude that a right is "clearly established" does not "require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate"); *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129-31 (10th Cir. 2013) (rejecting a post-arrest "duty to release" argument where the court concluded that "the clearly established weight of authority from other courts" had not "imposed a duty to release under [the] circumstances [presented]" (internal quotation marks and citation omitted)). We, therefore, conclude that Plaintiff has not met her burden to overcome Defendant's qualified immunity claim because she has not shown that the right arguably violated was clearly established.

**II. Whether Defendant Is Entitled to Qualified Immunity on Plaintiff's "Unreasonable Seizure" Claim Based on the Warrantless Blood Draw**

{19} Plaintiff next argues that Defendant violated her right to be free from unreasonable seizure "by subjecting her to a warrantless blood test unsupported by exigent circumstances[,]" a right she contends was clearly established as of May 4, 2013. Defendant contends that Plaintiff consented to the blood draw, thereby rendering it constitutional despite the absence of a warrant. Because it is potentially dispositive and informs later portions of our analysis, we first address Defendant's contention that Plaintiff consented to the blood draw. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) ("It is . . . well settled that one of the

15

specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."); *Amundsen v. Jones*, 533 F.3d 1192, 1194, 1201 (10th Cir. 2008) (explaining that "a blood test conducted pursuant to valid consent does not violate the Fourth Amendment[,]" and reversing the district court's denial of summary judgment on qualified immunity in a § 1983 case where the record established that the plaintiff voluntarily consented to a blood test).

**A.      Defendant Failed to Establish That Plaintiff Consented to the Blood Draw**

{20}      "Whether a search is consensual is a question of fact to be determined by the totality of the circumstances." *Marshall v. Columbia Lea Reg'l Hosp.* (*Marshall I*), 345 F.3d 1157, 1177 (10th Cir. 2003). To be valid, consent to search must be given freely and voluntarily. *See State v. Anderson*, 1988-NMCA-033, ¶ 7, 107 N.M. 165, 754 P.2d 542. "The determination of voluntariness involves a three-tiered analysis: (1) there must be clear and positive testimony that the consent was specific and unequivocal; (2) the consent must be given without duress or coercion; and (3) the first two factors are to be viewed in light of the presumption that disfavors the waiver of constitutional rights." *Id.* The party claiming that consent to search was given must establish by clear and convincing evidence that the consent was given voluntarily. *Cf. State v. Villanueva*, 1990-NMCA-051, ¶ 22,

110 N.M. 359, 796 P.2d 252 ("The state bears the burden of proof to establish that a consent to search was given voluntarily by clear and convincing evidence.").

{21} As the party moving for summary judgment on Plaintiff's complaint, Defendant bore the burden of showing that he was entitled to judgment as a matter of law on each of her claims.[1] *See* Rule 1-056(C) NMRA. Thus, to defeat Plaintiff's claim of a constitutional violation related to the warrantless blood draw on the theory of consent, Defendant bore the burden of showing that there was no genuine issue as to any material fact regarding a valid consent to search. The record exposes that Defendant failed to meet his burden.

{22} In his motion for summary judgment, the only statement of undisputed fact regarding consent to testing that Defendant set forth was that after placing Plaintiff under arrest, he "read [Plaintiff] New Mexico's Implied Consent Law, and she agreed to be tested." Defendant set forth no other facts on which the district court could find that there was "clear and positive testimony" that Plaintiff specifically and unequivocally consented to a blood draw. *Anderson*, 1988-NMCA-033, ¶ 7. Defendant contends that by failing to dispute the fact that she "agreed to be

---

[1] We analyze Defendant's argument based on Plaintiff's alleged consent to the blood draw under standard summary judgment rules because a defense based on consent is analytically distinct from a qualified-immunity-based defense. *See Marshall I*, 345 F.3d at 1176-77, n.12 (explaining that in that case, the defendants had not "raised or briefed qualified immunity" on appeal because they had prevailed in the district court on the "alternative ground" of consent-to-search, and analyzing the question of consent under the traditional summary judgment standard).

tested[,]" Plaintiff failed "to establish a genuine issue of material fact per Rule 1-056," meaning that Plaintiff "conceded the consent issue." Plaintiff argues the issue of consent "was never litigated." We agree with Plaintiff.

{23} The fact that Defendant's motion for summary judgment contains neither specific facts pertaining to whether Plaintiff consented to the blood test nor any argument whatsoever regarding Plaintiff's warrantless blood draw claim evinces that Defendant either failed to appreciate the need or chose not to address the warrantless blood draw claim, generally, and the question of consent, specifically. Moreover, whether Plaintiff consented to the blood draw is a question of fact that must be determined by the district court in the first instance. *See State v. Davis*, 2013-NMSC-028, ¶ 10, 304 P.3d 10 ("The voluntariness of consent is a factual question in which the trial court must weigh the evidence and decide if it is sufficient to clearly and convincingly establish that the consent was voluntary." (internal quotation marks and citation omitted)). Here, the district court entered no findings regarding whether Plaintiff consented to the blood draw because—following the flawed approach advanced by Defendant in his motion—it mistakenly believed that its finding regarding probable cause to arrest was "determinative" of all of Plaintiff's claims.

{24} Based on the foregoing, we agree with Plaintiff that Defendant failed to establish that Plaintiff unequivocally and specifically consented to the blood test

18

and that the issue of consent remains in dispute. Because Defendant cannot rely, at this juncture, on a defense that the blood draw was consensual, we next consider whether Defendant violated a clearly established right when he ordered hospital staff to seize Plaintiff's blood without a warrant.

**B.** **Defendant's Warrantless Blood Draw of Plaintiff Following Her Arrest for Misdemeanor DWI Violated a Clearly Established Right That Existed at the Time**

**1. Defendant Violated Plaintiff's Fourth Amendment Right When He Ordered Her Blood to Be Drawn Without A Warrant and Absent Exigent Circumstances**

{25}    "[A] warrantless blood test, performed without consent, is presumptively unreasonable unless the state actors involved had probable cause *and* exigent circumstances sufficient to justify it." *Marshall I*, 345 F.3d at 1172  (emphasis added). The reason for this is that "[t]he interests in human dignity and privacy which the Fourth Amendment protects forbid . . . intrusions [beyond the body's surface] on the mere chance that desired evidence may be obtained." *Schmerber v. California*, 384 U.S. 757, 769-70 (1966). "In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search." *Id.* The "exigent circumstances" exception to the warrant requirement "applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Missouri v. McNeely*, 569 U.S. 141, 148-49 (2013) (internal quotation marks and citation omitted). In the context of exigent circumstances that would support a warrantless blood draw in a case involving suspected DWI, there are no categorical rules—such as the dissipation of blood-alcohol evidence—establishing per se exigency. *See id.* at 147, 152. Rather, such cases require a "finely tuned approach" and "demand[] that [the courts] evaluate

20

each case of alleged exigency based on its own facts and circumstances." *Id.* at 150 (internal quotation marks and citation omitted). In the complete absence of exigent circumstances, however, a warrantless blood draw is considered unreasonable and, therefore, unconstitutional. *See Schmerber*, 384 U.S. at 770 ("Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned.").

{26} Here, Defendant identified no exigent circumstance whatsoever supporting the warrantless blood draw. His motion for summary judgment set forth no facts even tending to suggest that exigent circumstances existed that would justify seizing Plaintiff's blood under the circumstances, and he developed no argument at all regarding Plaintiff's specific allegation of a constitutional violation based on the unreasonable seizure of her blood. Indeed, Defendant singularly argued in his motion for summary judgment that "[t]he existence of probable cause or arguable probable cause is also a complete defense to a claim for unreasonable seizure and unlawful arrest[,]" wholly failing to appreciate that a warrantless blood draw requires both probable cause *and* exigent circumstances. Only after Plaintiff argued in her response to Defendant's motion for summary judgment that a warrantless blood draw requires exigent circumstances to be considered reasonable, did Defendant then contend that Plaintiff consented to the blood draw, thereby

21

rendering the warrantless blood draw constitutional even in the absence of exigent circumstances.

{27}     In the absence of Defendant even suggesting the presence of an exigent circumstance that may have justified the warrantless blood draw, we conclude that Plaintiff demonstrated that Defendant violated Plaintiff's constitutional right to be free from unreasonable search and seizure by ordering hospital staff to draw Plaintiff's blood without a warrant. The question, then, is whether that right was clearly established as of May 4, 2013.

**2.     The Right to Be Free From a Warrantless Blood Draw in the Absence of Exigent Circumstances Was Clearly Established**

{28}     "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & Cty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). As previously noted, the law, generally, regarding the unconstitutionality of a warrantless blood draw—absent consent or both probable cause and exigent circumstances—in a DWI case had been clearly established under United States Supreme Court law as of at least 1966. *See Schmerber*, 384 U.S. at 770 ("Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned."); *see also Birchfield v. North Dakota*, 136 S.Ct. 2160, 2173 (2016)

(explaining that the United States Supreme Court had "previously had occasion to examine whether [the exigent circumstances] exception [to the warrant requirement] applies in drunk-driving investigations" and noting that *Schmerber* "held that drunk driving *may* present" an exigent circumstance rendering constitutional a warrantless blood draw)[2]. It was also clear well prior to 2013 that "[s]tate actors administering a blood test without warrant or consent may be subject to suit under § 1983." *Marshall I*, 345 F.3d at 1171. And just prior to the incident giving rise to Plaintiff's claim in this case, the United States Supreme Court, in fact, reiterated that "[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *McNeely*, 569 U.S. at 152.[3] More

---

[2] To be clear, we recognize that *Birchfield* was decided after the events giving rise to Plaintiff's suit, and we do not rely on it in concluding that the right violated, here, was clearly established as of the time of the warrantless blood draw in this case. Indeed, *Birchfield* involved a different exception to the warrant requirement—the search-incident-to-arrest doctrine—that is not at issue in this case. *See id.* at 2173-74 (discussing *Schmerber* and *McNeely* and noting that those cases involved the exigent-circumstances exception whereas the cases before the *Birchfield* court involved the question of "how the search-incident-to-arrest doctrine applies to breath and blood tests incident to [drunk driving] arrests").

[3] Defendant points out that *McNeely* "was decided seventeen days before Plaintiff approached a DWI checkpoint in Colfax County." To the extent Defendant suggests that the nascent nature of the *McNeely* decision somehow diminishes its value in this analysis, we reject any such contention for two reasons. First, *McNeely* did not establish a new right of which Defendant may not have been aware, thus arguably making it unfair to make him stand suit and potentially hold

23

importantly, the law, specifically and under facts similar to those present here, was clearly established as of at least 2003, when *Marshall I*—an on-point Tenth Circuit case—was decided, and certainly no later than 2007, when *Marshall v. Columbia Regional Hospital* (*Marshall II*), 474 F.3d 733 (10th Cir. 2007), was decided and expressly held the specific right here at issue to be clearly established. We explain.

{29}     In *Marshall I*, the court reversed the federal district court's grant of summary judgment to police officers against whom the plaintiff had brought various § 1983 claims, including a Fourth Amendment warrantless blood test claim. *Marshall I*, 345 F.3d at 1159. In that case, the plaintiff was stopped in Hobbs, New Mexico for various traffic violations, arrested on suspicion of driving under the influence, and taken to the local jail where he submitted to sobriety tests and two breathalyzer tests. *Id.* at 1161. On the sobriety tests, the plaintiff "had difficulty completing the recitation of the alphabet (the 'ABC test')[,]" and there was "conflicting testimony about whether the horizontal gaze stymosis test was

---

him liable for a violation thereof. *McNeely* merely held that the exigent circumstance allowed in *Schmerber* to render reasonable a warrantless blood draw in that case could not be relied on as a "per se exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." *McNeely*, 569 U.S. at 144. Second, in light of the fact that in this case Plaintiff was arrested at a planned DWI checkpoint, set up by the New Mexico State Police, it is particularly unavailing to suggest that the officers involved may not have been aware of their constitutional obligations in connection with that checkpoint. *Cf. City of Las Cruces v. Betancourt*, 1987-NMCA-039, ¶ 10, 105 N.M. 655, 735 P.2d 1161 (explaining that "the reasonableness of any roadblock will be very closely scrutinized").

administered, and whether [the plaintiff] passed the finger-number test." *Id.* The plaintiff "passed" both breathalyzer tests. *Id.* An officer then transported the plaintiff to a hospital for blood testing. *Id.* The plaintiff told the nurse who took his blood, "I'm not going to resist, but you don't have my consent oral or written." *Id.* (internal quotation marks omitted). Upon the defendants' motion for summary judgment, the district court "concluded that the warrantless blood test was constitutional under the Supreme Court's ruling in *Schmerber*[.]" *Marshall I*, 345 F.3d at 1164. The district court found that based on the plaintiff's performance on the field sobriety test, "there was probable cause to justify the blood test, since passing the breathalyzer test did not rule out the presence of other drugs in his bloodstream." *Id.* (internal quotation marks and citation omitted). It, thus, rejected the plaintiff's Fourth Amendment claim. *Id.*

{30} The *Marshall I* court addressed whether "administration of a blood test without a warrant was in violation of the Fourth Amendment." *Id.* at 1171. After assuming, based on the district court's ruling, that the plaintiff's "mixed performance on the field sobriety tests provided probable cause for the blood tests[,]" the court turned to the "harder question" of "whether there were exigent circumstances." *Id.* at 1172. The court engaged in a lengthy discussion of the "exigent circumstances" requirement set forth in *Schmerber* vis-à-vis NMSA 1978, Section 66-8-111 (2005), of New Mexico's Implied Consent Act (NMICA),

25

NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2015). *See Marshall I*, 345 F.3d at 1172-74 The court noted that Section 66-8-111 provides that a warrant may only issue to compel chemical testing, including blood testing, in two circumstances: (1) upon probable cause "to believe that the person has driven a motor vehicle while under the influence of alcohol or a controlled substance, thereby causing the death or great bodily injury of another person," or (2) upon probable cause "to believe that the person has committed a felony while under the influence of alcohol or a controlled substance." Section 66-8-111(A); *see Marshall I*, 345 F.3d at 1173-74. Accordingly, the court reasoned, "[w]hen a crime is not important enough to justify a warranted search, it is not important enough to justify an 'exigent circumstances' search." *Marshall I*, 345 F.3d at 1173. The court noted that the record contained no evidence that the plaintiff had either caused death or great bodily injury, or that the blood test would produce material evidence in a felony prosecution because by all accounts, the plaintiff was charged with a first DWI offense, a petty misdemeanor. *Id.* at 1174. Concluding that exigent circumstances did not exist under the facts of that case—meaning the warrantless blood draw was unreasonable in violation of the Fourth Amendment—the court reversed the grant of summary judgment and remanded for further proceedings. *Id.* at 1176, 1181.

26

{31}     It is difficult to imagine a case more instructive than *Marshall I* for purposes of determining whether the law was clearly established as of 2013 that an officer in New Mexico who orders a blood draw in a misdemeanor DWI case in the absence of either a warrant, consent, or both probable cause and exigent circumstances violates a person's Fourth Amendment rights. The similarities—both factual and legal—between the cases abound. First, like in *Marshall I,* Defendant's probable cause determination to support a blood draw consisted of nothing more than Plaintiff's performance on the SFSTs. Second, Plaintiff had already passed two breath tests before being subjected to blood testing. Third, Plaintiff was charged with only a misdemeanor offense, meaning that under the plain language of Section 66-8-111(A), Defendant could not have obtained a warrant to test Plaintiff's blood under any circumstances. But most importantly and dispositive of the legal question here at issue is that like in *Marshall I*, Defendant failed to identify, let alone establish the existence of, any exigent circumstances that would support a warrantless blood draw in a misdemeanor DWI case.

{32}     To the extent there remained any question after *Marshall I* regarding the unconstitutionality of a warrantless nonconsensual blood draw in New Mexico in cases where the person was arrested for misdemeanor DWI, *Marshall II* unequivocally established that to be the law. In *Marshall II*, the court considered an appeal by the defendant officers in *Marshall I*, who, on remand following

27

*Marshall I*, were found liable by a jury for violating the plaintiff's Fourth Amendment right based on the warrantless blood test. *Marshall II*, 474 F.3d at 735. The officers argued that "the district court erred when it denied their post-judgment motion for judgment as a matter of law based on qualified immunity." *Id.* at 737. Specifically, the officers contended that at the time they ordered the blood draw, "no clearly established law precluded a warrantless nonconsensual blood test." *Id.* The *Marshall II* court flatly rejected that contention. Reiterating and expanding upon *Marshall I*'s analysis of *Schmerber* and the NMICA, the court concluded that (1) "the officers had fair warning of [the] exigent circumstances requirement under federal law[,]" and (2) the NMICA is "uniquely clear" regarding "whether or not a search or seizure conducted in violation of state law would also infringe the Fourth Amendment." *Marshall II*, 474 F.3d at 742, 743. The court—agreeing with the district court's conclusion that "it was objectively unreasonable for [the officers] to think they could lawfully give this blood test in the absence of [the plaintiff's] consent"—stated, "it is difficult to imagine how a competent officer could think it could make sense or be reasonable to violate state law." *Id.* at 746 (internal quotation marks and citation omitted).

{33}     Defendant's only attempt to distinguish *Marshall I* rests on his contention that the plaintiff in *Marshall I* expressly refused to consent to the blood test whereas Plaintiff, here, consented to the blood test. He contends that *Schmerber*

28

and *McNeely* also do not apply for the same reason: because those cases involved nonconsensual searches unlike the consensual search he contends occurred here. However, for the reasons already discussed, Defendant's arguments based on a contention that Plaintiff consented to the blood test are unavailing because Defendant has not, in fact, established that Plaintiff consented. In the absence of a factual distinction regarding the issues of consent between this case and those cited, we conclude that the violative nature of Defendant's particular conduct here at issue was clearly established and that he is, therefore, not entitled to qualified immunity on Plaintiff's warrantless blood draw claim.

**CONCLUSION**

{34}     We affirm the district court's grant of summary judgment to Defendant as to Plaintiff's unlawful arrest claim. We reverse the district court's grant of summary judgment to Defendant based on qualified immunity as to Plaintiff's unreasonable seizure claim insofar as it is based on the warrantless blood draw and remand for further proceedings in light of this opinion.

{35}     **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____

29

**M. MONICA ZAMORA, Judge**


_____

**JULIE J. VARGAS, Judge**